NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Anthony GIANFRANCESCO, | |
| Plaintiff, | Civ. No. 10-6553 |
| v. | |
| LABORERS INTERNATIONAL UNION OF NORTH AMERICA LOCAL 594, et al., | OPINION |
| Defendants. | |

THOMPSON, U.S.D.J.

### I.  INTRODUCTION

This matter has come before the Court upon the Motion for Summary Judgment filed by Defendants John Adams ("Adams"), Patrick Byrne ("Byrne"), Jose Colon ("Colon"), Eastern Regional Office of the Laborers International Union of North America ("Eastern Regional Office"), Laborers International Union of North America Local 594 ("Local 594"), New Jersey Building Construction Laborers District Council ("N.J. District Council"), and Raymond Pocino ("Pocino") (collectively, "Defendants").  (Docket Entry No. 37).  Plaintiff Anthony Gianfrancesco ("Gianfrancesco") opposes the motion.  (Docket Entry No. 39).  The Court has decided the matter upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons given below, Defendants' Motion for Summary Judgment is granted.

### II.  BACKGROUND

This case concerns Defendants' termination of Gianfrancesco, a union employee who participated in certain financial audits and then reported alleged illegalities that he discovered.

1

Gianfrancesco contends that he was terminated in retaliation for reporting these illegalities in violation of the New Jersey Conscientious Employee Protection Act ("CEPA").

   A.   *The Parties*

  The allegations contained in the complaint focus on Gianfrancesco's employment with the Laborers' International Union of North America ("LIUNA"), a labor union with its headquarters in Washington, D.C.  (Compl., Docket Entry No. 1, Attach. 3 (hereinafter, "Compl.") at ¶ 5).  Local 594 is a local branch of LIUNA that is located in East Brunswick, New Jersey.  (*Id*. at ¶¶ 1-2).  At all times relevant to this case, Gianfrancesco was a member of Local 594.  (*Id*. at ¶ 8).  The N.J. District Council is comprised of union members from several New Jersey unions, including Local 594.  (*Id*. at ¶ 3).  Before the formation of the N.J. District Council in August 2009, members of Local 594 were part of the Central New Jersey Building Laborers District Council ("CNJBLDC").  (*Id*. at ¶¶ 3-4).  Finally, the Eastern Regional Office exercises authority over both the N.J. District Council and Local 594.  (*See id*. at ¶¶ 7, 10).

  The remaining defendants were employed by LIUNA.  Pocino and Byrne worked at the Eastern Regional Office as Vice President and Assistant Regional Manager, respectively. (Def.'s Statement of Uncontested Material Facts, Docket Entry No. 37, Attach. 3 (hereinafter, "Statement of Facts") at ¶ 5).[1]  According to Gianfrancesco, Adams was the Business Manager and District Council Delegate for Local 594, (Compl. at ¶ 14), and Colon was Business Manager of the N.J. District Council.  (*Id*. at ¶ 16).

  Gianfrancesco was also employed by LIUNA.  (*See* Statement of Facts at ¶ 2).  During his tenure at LIUNA, he held positions at both the local union level and the district council level. (*Id*.).  According to Gianfrancesco, he served as President and District Council Delegate of Local

---

[1] Unless otherwise noted, a citation in this opinion to Defendants' Statement of Uncontested Material Facts indicates that the cited fact has been admitted by Gianfrancesco.

594 from approximately 2000 to 2009.  (Compl. at ¶ 17).  From 2007 until sometime in 2009, he also served as President of the CNJBLDC.  (*Id*.).  Finally, from mid-2009 until August 2009, Gianfrancesco served as Secretary Treasurer and Field Representative of the N.J. District Council.  (*Id*.).

B.   *Audits of the CNJBLDC & Local 594*

In or around 2008, financial audits of the CNJBLDC and Local 594 were conducted. (*See* Statement of Facts at ¶¶ 42, 48).  Regarding the audit of the CNJBLDC, Gianfrancesco cooperated fully in the audit, (*id*. at ¶ 45), which, according to Gianfrancesco, revealed "numerous wrongdoings and illegalities."  (Compl. at ¶ 26).  At the time of the audit, Gianfrancesco was Secretary Treasurer of the CNJBLDC, which required him to oversee the organization's finances.  (Statement of Facts at ¶¶ 42-43).  As described in the "Uniform District Council Constitution of the Laborers International Union of North America," the duties of the Secretary Treasurer include:

> submit[ting] the books to the auditors of the district council for inspection once a year or to a certified public accountant for the purpose of auditing the financial records of the district council and to the general president or a deputy or representative appointed by the general president for such purpose when requested.

(*Id*. at ¶ 44; *see also* Gianfrancesco Dep., Docket Entry No. 37, Attach. 7 at 60:1-61:24).

Gianfrancesco's role in the audit of Local 594 was limited.  As President of Local 594, he was present during the audit and held an initial conversation with the auditor.  (Statement of Facts at ¶¶ 48-49).  All parties agree that he cooperated fully with the audit in performance of the duties of his position.  (*Id*. at ¶ 48).

C.   *Credit Card Usage & Vacation Pay of Ralph Gianfrancesco*

Gianfrancesco's brother, Ralph Gianfrancesco ("Ralph"), was Vice President of Local 594 as well as Business Manager of the CNJBLDC.  (Compl. at ¶ 24).  According to

Gianfrancesco, a number of the illegalities and wrongdoings that came to light as a result of the financial audits involved Ralph. (*Id*. at ¶ 26). In particular, Ralph allegedly used a union credit card to make personal purchases and failed to relinquish the card upon retiring. (Statement of Facts at ¶¶ 23-25, 46). Additionally, Ralph was awarded pay for five weeks of unused vacation time upon his retirement. (*Id*. at ¶ 46). Gianfrancesco objected to Ralph's use of the union credit card as well as his receipt of payment for the unused vacation time. (*Id*. at ¶¶ 20, 23-25, 46).

At the time, Gianfrancesco was serving as Secretary Treasurer of the CNJBLDC. (*Id*. at ¶ 42). As previously discussed, the Secretary Treasurer is responsible for overseeing the CNJBLDC's finances, which includes making out checks to pay bills and reporting improper payments to superiors. (*Id*. at ¶ 43). All parties agree that Gianfrancesco was acting in accordance with his duties as Secretary Treasurer of the CNJBLDC in reporting the allegedly improper payments. (*Id*. at ¶ 47).

### D. *Non-Union Employees at New York Times Site*

In August 2009, Gianfrancesco went to a job site in Edison, New Jersey, known as the New York Times job site, and discovered workers that he did not recognize. (*Id*. at 33). According to Gianfrancesco, the workers were non-union and undocumented. (Compl. at ¶ 40). Gianfrancesco reported the presence of these workers to Byrne and Colon. (Statement of Facts at ¶¶ 35-36).

At the time, Gianfrancesco was employed as Field Representative for the N.J. District Council. (*Id*. at ¶ 38). Field representatives visit work sites where there are union contractors and ensure that union members are working on those sites. (*Id*. at ¶ 39). The N.J. District Council Policy and Procedures Manual explains that the duties of Field Representatives include

"policing the jurisdiction . . . collecting delinquent benefit fund contributions, and representing the interests of the District Council."  (*Id*. at ¶ 40).

### E.  *Termination*

On November 4, 2009, Gianfrancesco was terminated.  (*Id*. at ¶ 8).  Defendants allege that he was terminated due to a "deepening economic slump" that resulted in substantial losses for the union and a need to reduce the workforce.  (*Id*. at ¶¶ 52-54).  They contend that Gianfrancesco was identified for termination because he was an "underperforming" employee. (*Id*. at ¶ 62).  Plaintiff argues that he was terminated in retaliation for acting as a whistle-blower when he (1) cooperated with the audit of the CNJBLDC as its Secretary Treasurer and the audit of Local 594 as its President; (2) challenged the decision to pay Ralph for five weeks unused vacation time; (3) challenged Ralph's use of a union credit card for personal purchases; and (4) reported the presence of non-union and undocumented workers at the New York Times job site. (Compl. at ¶¶ 33-34, 40-41, 44, 55).

### F.  *Procedural Background*

On October 28, 2010, Gianfrancesco filed a civil action against Defendants in the Superior Court of New Jersey for violating CEPA.  (*See id*.).  The case was subsequently removed to federal court on December 14, 2010.  (*See id*.).  Defendants moved for summary judgment on October 5, 2012.  (Docket Entry No. 37).

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and

disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

IV.  <u>ANALYSIS</u>

Gianfrancesco brings this unlawful termination claim against Defendants pursuant to the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, et. seq. CEPA was enacted to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431 (1994). This whistle-blower statute reflects New Jersey's "deep[] commit[ment] to the principle that an employer's right to discharge an employee carries a correlative duty to protect his freedom to decline to perform an act that would constitute a violation of a clear mandate of public policy." *D'Agostino v. Johnson & Johnson, Inc.*, 225 N.J. Super. 250, 265 (N.J. Super. Ct. App. Div. 1988).

6

> To establish a prima facie case under CEPA, a plaintiff must demonstrate that:
>
> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Dzwonar v. McDevitt*, 177 N.J. 451, 462 (N.J. 2003).

Defendants argue that they are entitled to summary judgment because (1) Gianfrancesco did not engage in protected whistle-blowing activity because his actions were part of his job duties; (2) Gianfrancesco failed to identify a statute, regulation, rule of public policy that Defendants' conduct violated; (3) there was no evidence of a causal connection between Gianfrancesco's alleged whistle-blowing activities and his termination; and (4) Gianfrancesco was terminated for the legitimate reasons of financial necessity and poor job performance. After reviewing the factual record in this case, the Court has determined that Defendants are entitled to summary judgment because Gianfrancesco did not engage in protected whistle-blowing activity. Thus, the Court finds it is not necessary to consider Defendants' remaining arguments.

### A. Whistleblowing Activities

Defendants contend that Gianfrancesco has failed to prove the second element of a CEPA claim – that he engaged in whistle-blowing activity. (*See* Defs.' Br., Docket Entry No. 37, Attach. 3). Specifically, Defendants argue that his whistle-blowing activities fall within the job duties of the positions he held and, therefore, do not constitute whistle-blowing activities protected by CEPA. (*See id*. at 10-15).

A number of courts have found a "job duty exception" to CEPA. *See, e.g.*, *Kerrigan v. Otsuka Am. Pharm., Inc.*, No. 12-4346, 2012 WL 5380663 (E.D. Pa. Nov. 1, 2012); *Tayoun v. Mooney*, No. A-1154-10T3, 2012 WL 5273855 (N.J. Super. A.D. Oct. 26, 2012); *Aviles v. Big*

*M, Inc.*, No. L-1254-08, 2011 WL 780889 (N.J. Super. A.D. Mar. 8, 2011), *cert. denied*,. 208

N.J. 336 (2011); *White v. Starbucks Corp.*, No. L-2422-08, 2011 WL 6111882 (N.J. Super. A.D.

Dec. 9, 2011); *Richardson v. Deborah Heart & Lung Center*, No. A-4611-08T2 at 17-18 (N.J.

Super. Ct. App. Div. July 28, 2010), *cert. denied*, 205 N.J. 100 (2011); *Massarano v. New Jersey

Transit*, 400 N.J. Super. 474 (N.J. Super. Ct. App. Div. Jan. 30, 2008).  For example, in *Kerrigan

v. Otsuka Am. Pharm., Inc.*, the plaintiff reported to his superior an article that used information

from a panel sponsored by the employer without making proper disclosures.  2012 WL 5380663,

at *1.  Noting that company policy "requires employees to report any known compliance

violations to their supervisors," the court dismissed the CEPA claim, explaining that "a plaintiff

cannot establish that he engaged in a CEPA-protected act when the plaintiff's actions fall within

the plaintiff's job duties."  *Id*. at *2-3.

Furthermore, this very Court recognized the job duty exception in *Mehalis v. Frito-Lay,

Inc.*, No. 08-1371, 2012 WL 2951758, at *5 (D.N.J. July 2, 2012).  Although summary judgment

was ultimately granted on other grounds, this Court recognized that "New Jersey courts have

held that where a plaintiff is simply performing his own job duties, that is not whistle-blowing

under the CEPA."  *Id*.

In response, Gianfrancesco argues that there is no established job duty exception.  (Pl.'s

Br., Docket Entry No. 39 at 15-27).  To advance this argument, Gianfrancesco correctly points

out that the discussion of the job duty exception in *Massarano v. New Jersey Transit*, is *dicta*.

400 N.J. Super. at 490-91.  In that case, the plaintiff, a security operations manager for New

Jersey Transit, reported that blueprints of the loading dock were discarded in an unsecure

manner.  *Id*. at 479-80.  Ultimately, the court concluded that the plaintiff had not established that

discarding the documents in that way violated law or public policy and affirmed summary

judgment on that basis. *Id*. at 488-90.  The court explained, however, that "[e]ven if we were to find the disposal of the documents violated public policy, plaintiff's reporting the disposal to Watson did not make her a whistle-blower under the statute." *Id*. at 491.  "[T]he plaintiff was merely doing her job as the security operations manager by reporting her findings and her opinion . . . ." *Id*.  Thus, Gianfrancesco is correct that the discussion of the job duty exception in *Massarano* is not binding precedent.

Gianfrancesco then cites to three cases in which a plaintiff's CEPA claim was not dismissed despite the fact that the whistle-blowing activity fell within the duties of the employee's job.  *See Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958 (N.J. 1994); *Hallanan v. Twp. Of Fairfield Bd. of Educ.*, No. L-379-08, 2012 WL 1520822 (N.J. Super. Ct. App. Div. 2012); *Hernandez v. Montville Twp. Bd. of Educ.*, 808 A.2d 128 (N.J. Super. Ct. App. Div. 2002), *aff'd*, 843 A.2d 1091 (N.J. 2004).  Gianfrancesco urges the court to follow these cases rather than the unpublished opinions cited by Defendants.

The Court is unpersuaded, however, that the cases Gianfrancesco cites support a conclusion that there is no job duty exception to CEPA.  First, the cases he cites do not discuss the job duty exception at all.  For example, in *Abbamont*, a non-tenured industrial arts teacher was not re-hired after he reported the poor health and safety conditions in the school's metal shop, including hazards on a safety inspection checklist that he was required to complete.  138 N.J. at 410-11, 413.  While Gianfrancesco focuses on the fact that the Supreme Court did not reverse the jury verdict for the plaintiff even though the activity in question was arguably within his job duties, the Supreme Court never actually discussed the job duty exception.

Similarly, in *Hernandez* and *Hallanan*, the plaintiffs' whistle-blowing activities were arguably tasks they were required to perform as employees, yet the court did not apply the job

9

duty exception. *Hernandez*, 354 N.J. Super. at 469-71 (a custodian tasked with assuming responsibility for the general safety of the building was terminated after reporting certain safety issues); *Hallanan*, 2012 WL 1520822, at *4-7 (a school official required to report certain hiring information as an affirmative action officer was terminated after pointing out possible non-compliance).  In both cases, however, the court was not presented on appeal with an issue concerning the job duty exception and neither opinion discusses it.  Therefore, Gianfrancesco has not cited any case that holds there is no job duty exception.

Furthermore, Defendants' cases are more recent, suggesting that recognition of the job duty exception is an emerging trend.  In fact, Gianfrancesco cites to only one unpublished case, *Hallanan*, that was decided after the job duty exception first emerged in *Massarano* in 2008.  In light of the numerous other unpublished cases that have recognized the job duty exception since *Massarano*, the Court is unpersuaded by Gianfrancesco's argument that there is no job duty exception and declines to follow his reasoning.  Thus, "where a plaintiff is simply performing his own job duties, that is not whistle-blowing under the CEPA." *Mehalis*, 2012 WL 2951758, at *5.

Here, it is undisputed that Gianfrancesco was performing his job duties.  Gianfrancesco makes no assertion to the contrary in his brief, (*see* Pl.'s Br., Docket Entry No. 39 at 15-27), and the record is replete with admissions by Gianfrancesco that his alleged whistle-blowing activities fell within his job duties.  (*See, e.g.*, Statement of Facts at ¶ 45 ("[W]hen Plaintiff cooperated with the financial audit of the CNJBLDC he was performing his duties as secretary treasurer to the fullest extent possible."); ¶ 47 ("In making these objections [to Ralph Gianfrancesco's use of his union credit card after retirement and receipt of payment for unused vacation time], Plaintiff was reporting alleged improper payments in accordance with his duties as secretary treasurer of

the CNJBLDC."); ¶ 51 ("[W]hen Plaintiff cooperated with the financial audit of Local 594, he was performing his duties as president of Local 594; Gianfrancesco Dep., Docket Entry No. 37, Attach. 7 at 107:8-12).  Therefore, as Gianfrancesco's alleged whistle-blowing activities fall within his job duties, he is not entitled to relief under CEPA.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted.  An appropriate order will follow.


*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.


Date:  January 18, 2013